IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| CYNTHIA JOHNSON,<br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>    Defendant. | )<br>)<br>)<br>)    Civil No. 3:15cv296 (REP)<br>)<br>)<br>)<br>)<br>) |

REPORT AND RECOMMENDATION

On September 29, 2011, Cynthia Johnson ("Plaintiff") applied for disabled widow's benefits and Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from hypertension and a brain tumor, with an alleged onset date of July 10, 2007. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in not giving effect to a finding by a prior ALJ and in conducting a faulty pain analysis. (Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.")(ECF No. 12) at 1-2.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, rendering the matter

now ripe for review.[1] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 10) and Motion to Remand (ECF No. 11) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On September 29, 2011, Plaintiff filed an application for disabled widow's benefits and SSI with an alleged onset date of July 6, 2007. (R. at 216, 220, 239.) The SSA denied these claims initially on November 30, 2011, and again upon reconsideration on April 23, 2012. (R. at 92, 116.) At Plaintiff's written request, the ALJ held a hearing on December 19, 2013. (R. at 49, 164.) During the hearing, Plaintiff amended her alleged onset date to August 1, 2011. (R. at 32, 78.) On January 14, 2014, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 42.) On April 10, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to review by this Court. (R. at 1-5.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court will "affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (summarizing the ALJ's five step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ

to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On December 19, 2013, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. (R. at 47-79.) On January 14, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 42.) The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 35-42.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. at 35.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of a benign meningioma and asthma. (R. at 35.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work, except that she could frequently, but not constantly, tolerate exposure to hazards, such as unprotected heights or moving machinery. (R. at 37.) She could have no exposure to dust, fumes, odors, gases or like respiratory irritants. (R. at 37.)

At step four, the ALJ found Plaintiff had no past relevant work. (R. at 41.) Finally, at step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 42.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 42.)

## IV. ANALYSIS

Plaintiff, fifty-four years old at the time of this Report and Recommendation, previously worked as a nurse's aide. (R. at 239, 252.) Before the application at issue, Plaintiff had applied for benefits, but ALJ Drew Swank denied her application in a written decision on December 11, 2007. (R. at 81-91). In this instance, Plaintiff applied for Social Security benefits, alleging disability from hypertension and a brain tumor, with an alleged onset date of July 10, 2007. (R. at 251.) On January 14, 2014, ALJ Anthony Johnson denied her claim in a written decision. (R. at 32-42.) Plaintiff's appeal to this Court alleges that ALJ Johnson erred by not applying *res judicata* to the prior ALJ's findings and in conducting the pain analysis. (Pl.'s Mem. at 2-3.) For the reasons set forth below, the ALJ did not err in his decision.

### A. The ALJ properly considered the prior ALJ's decision.

Plaintiff argues that the ALJ should have applied *res judicata* to the prior ALJ's finding limiting Plaintiff's RFC to sedentary work. (Pl.'s Mem. at 1.) Additionally, at step two of the sequential analysis, the ALJ should have applied *res judicata* to ALJ Swank's finding that Plaintiff had significant limitation in balancing and vision. (Pl.'s Mem at 1.) Defendant responds that ALJ Johnson fully complied with the law with respect to prior ALJ decisions. (Def.'s Mot. for Summ. J. and Mem. in Supp. ("Def.'s Mem.") (ECF No. 13) at 10.) Because Plaintiff's assignments of error implicate the same case law, the Court will examine the case law for both before applying it to the step two finding and then the RFC.

When a claimant files an application for disability benefits after a previous denial of benefits, *res judicata* does not apply unless the claimant files an identical claim. *Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 476 (4th Cir. 1999). However, an ALJ must consider as evidence the findings made in a final decision by an ALJ or the Appeals Council on a prior disability claim. AR 00-1(4), 2000 WL 43744, at *4. And, the ALJ must give the prior finding "appropriate weight in light of all relevant facts and circumstances." *Id.* In determining the appropriate weight, the ALJ considers such factors as: (1) the fact's susceptibility to change with the passage of time; (2) the likelihood of such a change; and (3) the extent that evidence not considered in the prior claim provides a basis for making a different finding in the subsequent claim. *Id.* Prior findings about facts such as a claimant's RFC or the severity of an impairment generally deserve less weight as the timeframe between claims increases. *Id.* In reviewing the weight assigned to a prior ALJ finding, the Court applies the substantial evidence test. *See Albright*, 174 F.3d at 477-78 (applying the substantial evidence rule rather than preclusion principles to a prior ALJ's decision).

Here, ALJ Johnson acknowledged that Acquiescence Ruling 00-1(4) and *Albright* control. (R. at 32.) He then explained how the law required him to consider as evidence the prior ALJ ruling and listed the factors above that he should consider when determining the weight to assign the prior ruling. (R. at 32-33.) He recognized the discrepancies in his decision with ALJ Swank's at both step two and the RFC assessments. (R. at 35, 37.)

**i. The ALJ did not err at step two in his consideration of the prior ALJ decision.**

Plaintiff argues that the ALJ failed to include vision and balance limitations in the hypothetical posed to the VE. (Pl.'s Mem. at 9.) She contends that, because the prior ALJ found significant limitations in her vision and balance, the present ALJ should have included those

limitations in the hypothetical. (Pl.'s Mem. at 9.) Defendant responds that the ALJ complied with the law by explaining why his findings differed from the prior ALJ's decision. (Def.'s Mem. at 10.) While Plaintiff assigns error to the hypothetical, the root of her argument faults the ALJ's finding her visual limitations non-severe at step two. (Pl.'s Mem. at 9-11.)

At step two, the ALJ noted that his findings with respect to Plaintiff's severe impairments differed from ALJ Swank's step two findings. (R. at 35.) Specifically, ALJ Swank previously found that Plaintiff had the severe impairments of a left cavernous sinus meningioma with left sixth nerve palsy causing a diminished left visual field, headaches, asthma and hypertension. (R. at 35, 86.) However, ALJ Johnson found that Plaintiff now only suffered from the severe impairments of a benign meningioma and asthma. (R. at 35.) ALJ Johnson explained that this difference resulted from according the prior step two findings little weight. (R. at 35-36.) He accorded ALJ Swank's findings at step two little weight because of the passage of time and the submission of additional evidence. (R. at 35.)

The ALJ next explained how the evidence supported his findings. (R. at 36-37.) He noted that Plaintiff testified that despite her reported left eye visual limitations, glasses corrected her vision to completely normal. (R. at 36.) Furthermore, the medical evidence did not demonstrate that Plaintiff's left sixth nerve palsy remained an active condition since her alleged onset date. (R. at 36.) Ophthalmological examinations likewise did not reflect any visual limitations that had more than a minimal effect on Plaintiff's ability to work. (R. at 36.) He also noted that the medical evidence did not reflect that hypertension, hyperlipidemia, allergic rhinitis, hyperthyroidism and right elbow pain had more than a minimal effect on her ability to perform work-related activities for at least twelve months. (R. at 36.)

The time between the two adjudications supports the ALJ's decision. In AR 00-1(4), the agency cited as an example a time period exceeding three years that would justify giving little weight to a previous finding on the severity of a claimant's limitation. AR 00-1(4), 2000 WL 43744, at *5. Here, a significant amount of time, almost four years, elapsed between the prior ALJ denial and the alleged onset date of the disability at issue. (R. at 32.) Therefore, the ALJ could reasonably discount the findings of ALJ Swank based on the amount of time that had passed.

Substantial evidence supports the ALJ's decision. On October 5, 2009, and October 19, 2010, Plaintiff underwent CT scans ordered by her oncologist, Michael G. Chang, M.D. (R. at 522, 524.) The two scans had similar results, showing that the size of the lesion and the area of the enhancement had not changed. (R. at 522, 524.) The scans did not identify any acute intracranial abnormalities. (R. at 522, 524.)

On March 20, 2012, Plaintiff visited Dr. Chang for a follow-up. (R. at 564-65.) Dr. Chang noted that it had been four years and one month since her last radiology treatment. (R. at 564.) Dr. Chang also noted that a recent CT scan demonstrated no changes in the residual mesingioma. (R. at 565.) Furthermore, when Plaintiff requested that he help her obtain disability benefits, Dr. Chang reminded Plaintiff that she had a benign tumor that did not cause any symptoms. (R. at 565.) Dr. Chang found no evidence of disease progression. (R. at 565.)

On October 4, 2010, Plaintiff underwent an ophthalmological exam with Charles P. Gilchrest, O.D. (R. at 416.) Dr. Gilchrest prescribed new glasses to correct the refractive error leading to her left-eye vision loss. (R. at 417.)

Plaintiff's stated activities also support the ALJ's finding. On October 28, 2011, Plaintiff completed a function report. (R. at 264-271.) She reported that she read, wrote and watched TV.

(R. at 264.) Her limitations caused no problems with her personal care. (R. at 265.) She prepared her own meals daily and completed light housework without any assistance. (R. at 266.) She drove when going out. (R. at 267.) Importantly, she did not check the box indicating that her conditions affected her ability to see. (R. at 269.)

Plaintiff's testimony during the hearing also supports the ALJ's decision. She testified that she had completely normal vision with her glasses. (R. at 59.) She had no adverse effects or bad problems and could see everything normally. (R. at 59.) She testified that the glasses enabled her to see normally on her left side, despite the inward pointing of her eye. (R. at 59.) This testimony and her stated activities support the ALJ's decision not to give great weight to the prior ALJ's visual determinations.

In support of her argument, Plaintiff points to no evidence that establishes her severe visual limitations. Instead, she rests on the prior ALJ's decision and the probable visual damages that Plaintiff has suffered as a result of her brain tumor. (Pl.'s Mem. at 10-11.) Rather than relying on the prior ALJ's decision, however, the ALJ based his decision on the examination notes from Plaintiff's treating oncologist and her stated visual capabilities. (R. at 36, 39.)

The ALJ complied with the law in his consideration of the prior ALJ's decision with respect to Plaintiff's visual limitations. He considered the factors listed in AR 00-1(4), applied them to Plaintiff's claim, and explained why he accorded little weight to the prior ALJ's findings at step two. Substantial evidence supports that decision, and this Court will not disturb his decision in assigning weight to the prior ALJ's decision at step two.

### ii. The ALJ did not err in assigning weight to the prior ALJ's decision regarding the RFC.

Plaintiff argues that the ALJ erred by not applying *res judicata* to the prior ALJ's RFC that limited Plaintiff to sedentary work. (Pl.'s Mem. at 5.) Defendant responds that the ALJ

9

fully complied with the law by explaining why his decision differed from ALJ Swank's RFC. (Def.'s Mem. at 10.)

The requirements for considering the prior ALJ's decision when assessing the RFC mirror the requirements at step two. The ALJ must consider the prior findings as evidence and assign it weight. AR 00-1(4), 2000 WL 43744, at *4.

Here, the ALJ again recognized the discrepancies between his RFC and the prior ALJ's RFC assessment. (R. at 37.) The prior ALJ had found Plaintiff capable of performing a reduced range of sedentary work with visual, postural and environmental limitations. (R. at 37.) However, the present ALJ found Plaintiff capable of performing light work with further environmental limitations. (R. at 37.) He attributed the differences to the fact that he accorded little weight to the prior ALJ's findings, because of the passage of time and submission of additional evidence. (R. at 37-38.) Substantial evidence in the form of new evidence and an extended amount of time between the adjudications support the ALJ's decision.

The time between the two adjudications supports the ALJ's decision. In AR 00-1(4), the agency cited as an example a time period exceeding three years that would justify giving little weight to a previous finding of the claimant's RFC. AR 00-1(4), 2000 WL 43744, at *5. Here, a significant amount of time, almost four years, elapsed between the prior ALJ denial and the alleged onset date of the disability at issue. (R. at 32.) Therefore, the ALJ could reasonably discount the RFC of ALJ Swank based on the amount of time that had passed.

The new evidence also supports the ALJ's decision not to give controlling weight to the prior ALJ's findings. On March 20, 2012, Dr. Chang noted that Plaintiff had a benign meningioma that caused her no symptoms. (R. at 565.) He found no evidence of disease progression. (R. at 565.) This opinion from Plaintiff's treating oncologist, not available to the

prior ALJ, constitutes new evidence that factors into ALJ Johnson's decision when according weight to the prior ALJ's findings.

On April 19, 2012, Plaintiff visited Lisa Haynie, M.D. (R. at 570.) Dr. Haynie found Plaintiff's lungs clear to auscultation bilaterally. (R. at 570.) This new evidence regarding Plaintiff's respiratory complaints demonstrates a possible change in condition from the prior ALJ's decision, supporting ALJ Johnson's decision to accord that decision little weight.

The opinions of the state agency physicians support the ALJ's decision to accord little weight to the prior ALJ's finding. On November 29, 2011, state agency consultant R.S. Kadian, M.D., opined that Plaintiff could perform light work with further environmental limitations. (R. at 100-02.) Likewise, on April 23, 2012, state agency physician Leslie Ellwood, M.D., opined that Plaintiff could perform light work with environmental limitations. (R. at 125-27.) Again, the prior ALJ did not have these opinions available to him.

Plaintiff's emphasis on the holding in *Lively v. Secretary of Health and Human Services*, 820 F.2d 1391 (4th Cir. 1987), misconstrues the controlling case law in the Fourth Circuit. Plaintiff argues that *Albright* did nothing to contradict *Lively*, which places a heavy burden on the Commissioner when making a finding different than in a prior disability adjudication. (Pl.'s Mem. at 5-6.) According to Plaintiff, *Lively* dictates that the ALJ apply *res judicata* to the prior ALJ's decision. (Pl.'s Mem. at 6.)

In *Lively*, the Fourth Circuit applied *res judicata* to a prior ALJ's finding that the claimant could perform light work. 820 F.2d at 1392. However, only two weeks had elapsed since that finding and when the claimant had reached advanced age. *Id.* at 1391. His advanced age combined with the prior finding would have qualified him as disabled. *Id.* The court reversed the subsequent ALJ for not giving preclusive effect to the prior ALJ's finding absent

"evidence of any such miraculous improvement." *Id.* at 1392. Had the Fourth Circuit not clarified this ruling in *Albright*, Plaintiff's argument here could have some merit.

In *Albright*, the Fourth Circuit limited the reach of preclusion that may have stemmed from *Lively*. 174 F.3d at 477 ("Rather than signaling a sea of change in the law of preclusion, the result in *Lively* is best understood as a practical illustration of the substantial evidence rule.") The logic evident in *Lively* that required evidence of a change since the prior ALJ's finding does not apply when dealing with an elongated timeframe. *Id.* Therefore, the holding in *Lively* would rarely apply. *Id.* As the time period between agency adjudications grows, *Lively* applies less and *Albright* applies more. *See Albright*, 174 F.3d at 477 (becoming "ever less confident as the timeframe expands" that the claimant's condition could have remain unchanged between adjudications); AR 00-1(4).

Here, the six-year time period between the two ALJ hearings eviscerates whatever preclusive effect *Lively* may dictate in other cases. Instead, the law requires only that ALJ Johnson consider and weigh the prior ALJ's decision. AR 00-1(4), 2000 WL 43744, at *4. The ALJ fulfilled this duty by explaining that the passage of time and the submission of new evidence resulted in him according little weight to the prior ALJ's RFC assessment. Substantial evidence detailed above supports the ALJ's decision.

Plaintiff also argues that the prior ALJ's decision deserves greater weight, because the current ALJ misinterpreted the records pertaining to Plaintiff's thyroid condition. (Pl.'s Mem. at 8-9.) She claims that the ALJ analyzed how *hyper*thyroidism affected her ability to work, but the record demonstrates Plaintiff suffers from *hypo*thyroidism. (Pl.'s Mem. at 8.) The fatigue caused by hypothyroidism could bolster the prior ALJ's decision for a sedentary exertional level.

(Pl.'s Mem. at 8.) The ALJ determined that Plaintiff's thyroid condition did not have more than a minimal effect on Plaintiff's ability to perform work-related activities. (R. at 36.)

Substantial evidence supports the ALJ's decision, because the record does not clearly demonstrate that a thyroid condition affected Plaintiff. On November 14, 2011, Dr. Haynie noted a recent diagnosis of hyperthyroidism for Plaintiff. (R. at 557.) Dr. Haynie opined that the hyperthyroidism could cause the fatigue that she experienced. (R. at 557.) Then, on April 19, 2012, Dr. Haynie listed hypothyroidism under Plaintiff's diagnoses. (R. at 570.) Finally, on May 13, 2013, Plaintiff visited Thomas Henderson, M.D., but the notes from that visit make no mention of any thyroid condition. (R. at 575-77.) In fact, the record lacks any other reflection of the thyroid condition affecting Plaintiff. Therefore, the record supports the ALJ's decision with respect to Plaintiff's possible thyroid condition.

Furthermore, Plaintiff's argument that this possible misinterpretation of Plaintiff's thyroid condition renders ALJ Johnson's consideration of the prior ALJ's decision erroneous lacks merit. The ALJ's decision with respect to the thyroid condition did not affect the weight that he assigned to the prior ALJ's findings. The ALJ first determined, based on his consideration of the factors listed in AR 00-1(4), that the prior ALJ decision deserved little weight. (R. at 36-38.) He then assessed Plaintiff's RFC, factoring in the entire record, including the minimally weighted prior ALJ decision. (R. at 38-41.) Any consideration of the thyroid condition with respect to the RFC took place after according the prior ALJ's decision little weight. Therefore, the thyroid condition could not have resulted in error at the first step in this process.

The ALJ followed the proper procedures in considering the prior ALJ's findings. He explained his reasons for according it little weight, and substantial evidence supports that

decision. Therefore, the ALJ did not err in failing to apply *res judicata* to the prior ALJ's findings.

### B. The ALJ did not err in conducting Plaintiff's pain analysis.

Plaintiff argues that the ALJ erred in assessing Plaintiff's alleged pain. (Pl.'s Mem. at 11.) She contends that the ALJ skipped the first step required in the two-step process. (Pl.'s Mem. at 11-13.) Defendant responds that Plaintiff conflates the ALJ's requirements at step two with the ALJ's requirements when assessing Plaintiff's subjective complaints of pain. (Def.'s Mem. at 17-18.)

When assessing Plaintiff's RFC, the ALJ must incorporate impairments supported by the objective medical evidence in the record and those impairments that have a basis in Plaintiff's credible complaints. In evaluating Plaintiff's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594; SSR 96-7p; 20 C.F.R. §§ 404.1529(a), 416.929(a). The first step requires the ALJ to determine the existence of an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. SSR 96-7p at 1-3. The ALJ must consider all of the relevant medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p at 5, n.3; *see also* 96-8p at 13 ("The RFC assessment must be based on all of the relevant medical evidence in the record . . . .") If the underlying impairment could reasonably produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate Plaintiff's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility determination of Plaintiff's statements regarding the extent of the

symptoms, and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d at 595-96; SSR 96-7p at 5-6, 11.

Here, the ALJ completed both steps required by *Craig*. First, he explained that Plaintiff reported experiencing headaches, dizziness, vertigo, left eye visual limitations and fatigue in her written statements and testimony. (R. at 38.) Next, he found that "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 39.) This sentence constitutes the step one requirement set forth in *Craig*.

Next, the ALJ conducted the second step required by *Craig*. He discredited Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms. (R. at 39.) Finally, he conducted a review of the medical evidence that supported his determination of Plaintiff's credibility. (R. at 39-41.)

In conducting the two-step *Craig* assessment, the ALJ considered the symptoms alleged by Plaintiff in her disability application and testimony at the hearing. (R. at 38.) He did not consider her leg pain, which Plaintiff argues resulted in error. (Pl.'s Mem. at 12-13.) However, Plaintiff did not allege leg pain as a disabling condition in her disability application. (R. at 251.) Nor did she mention any conditions related to her legs in her testimony before the ALJ. (R. at 49-70.) Therefore, the ALJ did not err by not explicitly addressing it in his pain analysis.

Because the ALJ addressed the allegations made by Plaintiff and properly conducted both steps, he did not err in analyzing Plaintiff's subjective complaints.

V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiffs Motion for Summary Judgment (ECF No. 10) and Motion for Remand (ECF No. 11) be DENIED, that

Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____<br>
David J. Novak<br>
United States Magistrate Judge

Richmond, Virginia
Date: <u>January 27, 2016</u>